IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VALERIE D. MILBERY | § | |
| | § | |
| V. | § | CASE NO. 4:09cv550 |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for Supplemental Security Income ("SSI"). After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be **AFFIRMED**.

**HISTORY OF THE CASE**

Plaintiff protectively filed an application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act on August 8, 2007, claiming entitlement to disability benefits due to severe hypertension, hysterectomy history, Meniere's disease, left hip replacement, adjustment disorder, and anxiety disorder. Plaintiff's application was denied initially and on reconsideration. Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) in Dallas, Texas on October 7, 2008. Plaintiff was represented by counsel at the proceeding. At the hearing, Plaintiff, the ALJ's medical expert, John Billinghurst, M.D., and the ALJ's vocational expert, Tammie Donaldson, testified.

1

On February 4, 2009, the ALJ denied Plaintiff's claim, finding Plaintiff "not disabled." Plaintiff requested Appeals Council review, which the Appeals Council denied on September 4, 2009. Therefore, the February 4, 2009 decision of the ALJ became the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981 (2005).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation. The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 3, 2007 through her date last insured of December 31, 2008 (20 C.F.R. § 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: hypertension, hysterectomy history, Meinere's disease, left hip replacement, adjustment disorder under 12.04 and an anxiety disorder under 12.06 (20 C.F.R. § 404.1521 *et seq.*).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work: lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; sit 6 hours in an 8 hour workday; stand and/or walk 2 hours in an 8 hour workday with the ability to alternate sit/stand every 30-45 minutes to stand and stretch for 2-3 minutes; has the ability to occasionally balance, stoop/bend, squat/kneel, crouch and crawl but should

>           avoid climbing ladders, scaffolds, hazards and loud noise environments.
>           The claimant also has the ability to understand, remember and carry out
>           detailed but not complex tasks and instructions.
>
>     6.    Through the date of last insured, the claimant was capable of performing
>           past relevant work as a receptionist. This work did not require the
>           performance of work-related activities precluded by the claimant's residual
>           functional capacity (20 C..F.R. § 404.1565).
>
>     7.    The claimant was not under a disability, as defined in the Social Security
>           Act, at any time from July 3, 2007, the alleged onset date, through
>           December 31, 2008, the date last insured (20 C.F.R. § 404.1520(g)).

(T.R. 14-20).

## **STANDARD OF REVIEW**

Judicial review of the Commissioner's final decision of no disability is limited to two inquiries: whether the decision is supported by substantial evidence in the record, and whether the proper legal standards were used in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401. The Court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court is not to substitute its judgment for that of the Commissioner, and reversal is permitted only "where there is

a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). In determining a capability to perform "substantial gainful activity," a five-step "sequential evaluation" is used, as described below.

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who, at the time of his disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987).

At the fifth step, it must be determined whether claimant could perform some work in the national economy. A claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

At this juncture, the burden shifts to the Commissioner to show that there are jobs existing in the national economy which Plaintiff can perform, consistent with his medically determinable impairments, functional limitations, age, education, and work experience. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). Once the Commissioner finds that jobs in the national economy are available to the claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

In this case, a determination was made at the fourth step.

## **ANALYSIS**

Plaintiff first asserts that the ALJ improperly rejected the opinion of Dr. Kheshqi, who Plaintiff claims was her treating physician. Primarily, Plaintiff states that the ALJ committed error in rejecting the questionnaires filled out by Dr. Kheshqi (questionnaires prepared by counsel). The ALJ must show good cause for assigning a treating physician's medical opinions little or no weight, such as by showing that the opinion is conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence. *Greenspan,* 38 F.3d at 237. The ALJ gave his reasons for rejecting the opinion of Dr. Kheshqi. Although he acknowledges the questionnaire, the ALJ notes that there is nothing in the medical record to support

the fibromyalgia or inflammatory arthritis assessment. Plaintiff points out that Dr. Kheshqi noted 12 of 18 tender points. This assessment was overlooked by the testifying ME, Dr. Billinghurst. However, Dr. Kheshqi only assessed possible fibromyalgia. The majority of Plaintiff's doctor visits concern sinus problems. Other visits note back pain after lifting heavy objects. As noted by Dr. Billinghurst and demonstrated by the records of her treating physician, Dr. Jenkins, inflammatory arthritis was never demonstrated in Plaintiff's blood work.

Even the consultative doctor, Dr. Lee, noted that Plaintiff had no problems ambulating. The ALJ had the full record in front of him and specifically notes that the medical evidence does not support Dr. Kheshqi's diagnosis. Substantial evidence supports the ALJ's finding.

Plaintiff next contends that the ALJ erred in not finding her fibromyalgia as severe. She indicates that although the ALJ cited *Stone v. Heckler*, 752 2d 1099 (5th Cir. 1985), he quoted the wrong standard. However, a review of the ALJ's statement shows that he cites the *Stone v. Heckler* standard. He states that an impairment is severe if it is more than a slight abnormality (rather than a slight abnormality) and imposes more than a minimal limitation (rather than having such minimal effect). The Court also notes that the ALJ cited to SS Rule 85-28. The Court finds that the ALJ basically stated the correct standard and Plaintiff has not demonstrated how she was prejudiced. Again, there was no real objective record that shows she had fibromyalgia. At the best, there is a possible diagnosis. The Court believes that a possible diagnosis does not meet claimant's burden to prove that an impairment is severe at step 2, bearing in mind that the burden of proof is on her. Procedural perfection is not required in administrative hearings unless the substantial rights of the

claimant have been affected. *Mays v. Bowen*, 837 F.2d 1362,1364 (5th Cir. 1988).

The medical records demonstrate that most of Plaintiff's complaints do not deal with fibromyalgia. At best, there was only a tentative diagnosis. And further, the lab tests seem to confirm no inflammatory process noted in the blood work. Additionally, the ALJ's analysis was not determined at step 2 but rather determined at step 4. Therefore, there is some question as to whether failure to assess any impairment as severe is rendered moot when the ALJ proceeds on to a step 4 or 5 analysis.

Plaintiff next complains that the ALJ's RFC is not supported by substantial evidence. Plaintiff again rehashes much of her argument as to the ALJ's failure to properly consider Dr. Kheshqi's opinion. Plaintiff also argues that her Meniere's disease should have impacted the ALJ's RFC. Again, the records which indicate treatment also indicated that overall her condition was normal when testing was done to evaluate dizziness and balance (T.R. 513). As stated, Dr. Lee found no problems with balance. Although her audiograms showed potential right ear involvement, there is no showing that she could not hear out of her right ear. She wears no hearing aids, although she says she has lost all hearing in her left ear. Records of Dr. Matheny only noted diminished hearing loss in the left year. The ALJ took her diminished hearing into account in his hypothetical to the ME, as well as fully discussed the matter with the VE. Counsel crossed the VE on impaired hearing as to both ears. Although the ALJ commented on the Plaintiff's credibility, he found that her most serious symptoms were outside the range of reasonable attribution according to the medical records in existence (T.R. 19). There is no evidence that Plaintiff cannot hear out of her right ear.

The VE testified that she could perform work as a receptionist even though she had hearing loss in the left ear. Therefore, the Court finds that the ALJ correctly determined the RFC as he saw it.

Finally, Plaintiff argues that the ALJ erred in finding that she could do her past job as a receptionist. Plaintiff argues that Dr. Dansby's report notes that she has hearing loss in her right ear as well as left (T.R. 510). However, Dr. Dansby only states that the audiogram demonstrates early signs of potential involvement of the right ear. He does not state or quantify the degree of hearing loss she may have. Further, he also indicates that this may indicate an autoimmmune component to her symptoms. He ordered tests to confirm, which are negative (T.R. 511). According to the doctor's notes the MRI was also negative. Therefore, it appears the next treatment step would be a gentamicin (antibiotic) therapy since had clear localizing left ear symptomatalogy. (T.R. 510). The Court finds that there is nothing in the record to indicate that Plaintiff could not perform her job as a receptionist.

## **RECOMMENDATION**

Pursuant to the foregoing, the Court RECOMMENDS that the decision of the Administrative Law Judge be **AFFIRMED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days shall bar an aggrieved party from attacking the factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc).

**SIGNED this 24th day of January, 2012.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE